

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

April 14, 2026

**BY ECF**

The Honorable Colleen McMahon
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:    *United States* v. *Jamal Frazer*, Nos. 26 Cr. 18 (CM), 11 Cr. 912 (CM)

Dear Judge McMahon:

The Government respectfully submits this letter in advance of the sentencing scheduled for April 20, 2026, at 2:00 p.m. The defendant, Jamal Frazer, pled guilty pursuant to a plea agreement in 26 Cr. 18 to conspiring to traffic firearms between March 2025 and August 2025, in violation of 18 U.S.C. § 933(a)(3). For related conduct, Frazer also admitted to Specification Seven of the October 3, 2025, Violation Report (the "Violation Report") issued in 11 Cr. 912. As explained below, the Government respectfully submits that a Guidelines sentence of seventy-one months' imprisonment in 26 Cr. 18, followed by a consecutive Guidelines term of twelve months' imprisonment in 11 Cr. 912, would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

## I.    Background

*The Defendant's History of Firearms Offenses*

This is the defendant's third serious criminal offense, and his second federal conviction in this District, involving illegal firearms. PSR ¶¶ 42, 44.[1] In 2010, the defendant was sentenced to two years' imprisonment in state custody and two years' post-release supervision for shooting a firearm at a woman with the intent to cause her serious physical injury or death and later possessing three .38 caliber bullets in the Bronx. PSR ¶ 42.

In 2013, less than a year after his release from state custody and while he was still on state post-release supervision, the defendant joined an armed robbery conspiracy. The defendant and

---

[1] The defendant also has prior state convictions for fifth- and third-degree criminal possession of stolen property, disorderly conduct, perjury, and unlicensed operation of a motor vehicle. PSR ¶¶ 39-41, 43, 45.

The Honorable Colleen McMahon
April 14, 2026
Page 2 of 7

his co-conspirators robbed drug dealers and commercial businesses at gunpoint. The defendant also carjacked a drug dealer. During one robbery, the defendant discharged his firearm. PSR ¶ 44.

For those violent robberies, the defendant pled guilty to a robbery conspiracy and brandishing a firearm in furtherance of a crime of violence before the Hon. John F. Keenan, U.S. District Judge for the Southern District of New York, in 11 Cr. 912. Judge Keenan sentenced the defendant to a total sentence of 154 months' imprisonment, to be followed by three years' supervised release. PSR ¶ 44.

While in federal custody, the defendant repeatedly violated prison rules. The defendant was disciplined for fourteen rules violations, including four separate citations for fighting with another person and three separate citations for possessing contraband. The defendant was released from federal prison on August 15, 2024. PSR ¶ 44.

Like he had done during his state post-release supervision, the defendant began violating the terms of his federal supervised release almost immediately after his release from custody. The defendant tested positive for marijuana four times in the first four months of his supervised release term; in February 2025, the defendant was arrested by Westchester County officials for obstructing governmental administration; and in August 2025, the defendant was arrested by the New York City Police Department in the Bronx after he fled from the police while wearing a ballistic vest, a gun belt, and a firearms holster, and carrying a folding knife. PSR ¶¶ 44, 53.

*The Offense Conduct*

Beginning in March 2025—just nine months into his term of federal supervised release—and running through August 2025, the defendant sold a confidential informant (the "CI") working with federal law enforcement officers five illegal firearms during three separate controlled purchases.

In early 2025, law enforcement received a tip that the defendant was selling firearms illegally and introduced a CI to the defendant to follow up on the tip. PSR ¶¶ 7-8. In early March 2025, the CI texted with the defendant to arrange a firearms purchase. The defendant agreed to sell the CI a handgun for $950. PSR ¶ 10. On March 13, 2025, the defendant took the CI from the Bronx to meet a co-conspirator in Queens. The defendant then took the CI back to the Bronx and sold the CI the nine-millimeter semi-automatic handgun pictured below. PSR ¶ 11.



The Honorable Colleen McMahon
April 14, 2026
Page 3 of 7

In mid-July 2025, the CI contacted the defendant again and arranged to purchase firearms from him for $3,000. The CI met the defendant near a restaurant on Boston Road in the Bronx. At that location, the defendant and two co-conspirators sold the CI a nine-millimeter carbine-style rifle with a high-capacity magazine and a .40 caliber handgun with two loaded magazines, both pictured below. The .40 caliber handgun had previously been reported stolen. PSR ¶¶ 12-13.

 

In early August 2025, the CI arranged to purchase more firearms from the defendant for $4,800. The CI met the defendant on East 221st Street in the Bronx. After some back and forth with co-conspirators near a truck a few blocks away, the defendant sold the CI the two nine-millimeter handguns pictured below. PSR ¶¶ 15-16.



The defendant was arrested on the current set of federal charges on August 26, 2025. PSR ¶ 19.

## II.    The Plea Agreement and Guidelines Calculation

The defendant and the Government have entered into a written plea agreement that contains stipulations with respect to calculations under the U.S. Sentencing Guidelines (the "Guidelines" or "U.S.S.G."). The parties agree that the defendant's offense level for the new criminal offense in 26 Cr. 18 is twenty-three, the defendant is in Criminal History Category III, and the Guidelines range is fifty-seven to seventy-one months' imprisonment. PSR ¶¶ 25-48, 102. The U.S. Probation Department ("Probation") calculated the same Guidelines range. PSR ¶ 104. For the defendant's violation of supervised release in 11 Cr. 912 described in Specification Seven of the Violation Report, the Guidelines range is six to twelve months' imprisonment.

The Honorable Colleen McMahon
April 14, 2026
Page 4 of 7

### III.    Applicable Law

The Sentencing Guidelines continue to provide important guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Though they are advisory and not mandatory, the Sentencing Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007). It follows that district courts should treat the Sentencing Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id*. at 49; *see also Booker*, 543 U.S. at 264 (explaining that district courts must "consult" the Sentencing Guidelines and "take them into account" when sentencing). Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49.

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### IV.    Consecutive Guidelines Sentences of Seventy-One Months' Imprisonment and Twelve Months' Imprisonment Are Appropriate

Under the above framework, the Government respectfully submits that a Guidelines sentence of seventy-one months' imprisonment in 26 Cr. 18 followed by a consecutive Guidelines sentence of twelve months' imprisonment in 11 Cr. 912 will be sufficient but not greater than necessary to comply with the purposes of sentencing, taking into account the factors set forth in 18 U.S.C. § 3553(a).

The Honorable Colleen McMahon
April 14, 2026
Page 5 of 7

## Nature and Seriousness of the Offense

A Guidelines sentence of seventy-one months' imprisonment in 26 Cr. 18 is necessary to reflect the nature of the offense and the seriousness of the defendant's conduct.[2]

The defendant's firearms trafficking was deeply serious. Despite previously being convicted in federal court for brandishing a firearm (which he then shot) during an armed robbery, the defendant worked with others to sell the CI multiple firearms on three separate occasions across New York City. The firearms the defendant and his co-conspirators sold were extraordinarily dangerous instruments capable of inflicting grievous bodily harm and death. The firearms the defendant and his co-conspirators sold were often loaded. One of those firearms was stolen. And another firearm was a carbine-style rifle gun with a high-capacity magazine of the kind one often sees in mass shootings. There was no legitimate reason for those firearms to be circulating the streets of the Bronx, and the defendant had absolutely no business profiting from the illegal sale of those weapons after his prior felony firearms convictions.

## Deterrence and Protecting the Public

The factors that are perhaps even more important in this case, however, are the needs to promote specific deterrence and to protect the public from future crimes of the defendant. Both of those considerations strongly favor consecutive Guidelines sentences of seventy-one months' imprisonment in 26 Cr. 18 and twelve months' imprisonment in 11 Cr. 912.

The defendant's criminal history reflects, at a minimum, a stubborn unwillingness to follow firearms laws or to appreciate the danger that those weapons pose. Even before he started illegally selling firearms, including a carbine-style rifle, to the CI in this case, the defendant had two prior convictions for illegal firearms use and possession, and both of those convictions involved the defendant *discharging* a firearm. The defendant's prior federal firearms conviction is particularly alarming because it arose from a sustained effort by the defendant and his former co-conspirators to threaten and shoot at multiple robbery victims on multiple occasions. That violent conduct caused Judge Keenan to impose on the defendant a well-deserved and weighty sentence of 154

---

[2] This sentencing factor embodies the "retributive purposes of sentencing." *Esteras v. United States*, 606 U.S. 185, 192 (2025). The Government requests that the Court weigh this factor only in imposing a sentence for the defendant's new crime in 26 Cr. 18. In imposing the sentence for the violation of supervised release in 11 Cr. 912, the Court "cannot" consider retribution for the robbery and firearms offenses of which the defendant was originally convicted. *Id.* at 195. The Court should also avoid in its 11 Cr. 912 analysis considering retribution for the conduct that violated the defendant's release conditions. *See id.* at 194 n.5. That said, the Court may consider in its 11 Cr. 912 analysis "the nature and circumstances" of both the defendant's prior robbery and firearms convictions and the current conduct that violated supervised release to the extent those circumstances are "relevant for [other sentencing] considerations," such as deterrence and protecting the public. *Id.* at 200; *see also id.* at 202-03 (providing additional guidance to sentencing courts about how to clarify that they have not "impermissibly relied on" retribution in imposing a sentence for a supervised release revocation).

The Honorable Colleen McMahon
April 14, 2026
Page 6 of 7

months' imprisonment. And yet even that sentence apparently did not sufficiently underscore for the defendant the significance of the firearms laws—less than a year after being released from federal prison, the defendant was back to possessing and distributing illegal guns on the streets of the Bronx. That repeated refusal to follow the firearms laws after being convicted twice for shooting firearms at people raises serious concerns about the safety of the public upon the defendant's release and calls for a top-of-the-Guidelines sentence to impress upon the defendant that he cannot illegally use and possess firearms a fourth time.

The defendant's repeated rules violations, both in and out of custody, also raise serious public safety and deterrence concerns. Since his state conviction after shooting a firearm nearly sixteen years ago in 2010, the defendant has spent, cumulatively, about one year and three months at liberty in the community. The defendant was on either state or federal post-release supervision that entire time, and yet despite that court-ordered monitoring, he still managed to terrorize the Bronx: In that short period, the defendant committed multiple gunpoint robberies, committed an armed carjacking, fired a gun during a robbery, found himself arrested for wearing a ballistic vest and gun belt, and sold five illegal guns to a CI. When the defendant was not in the community during that period because he was serving his prior federal sentence, the defendant still posed a significant danger to those around him, repeatedly violating prison rules, including by participating in multiple fights. Simply put, the defendant cannot point to any sustained period of lawful behavior in any setting, no matter the level of judicial supervision, between 2010 and the present. That record should give the Court every reason to be concerned about who might be harmed next when the defendant is released, and the Court should do everything that it can in imposing sentence to limit that potential future harm.

### Unwarranted Sentencing Disparities

Finally, consecutive Guidelines sentences of seventy-one months' imprisonment in 26 Cr. 18 and twelve months' imprisonment in 11 Cr. 912 are necessary to avoid unwarranted sentencing disparities.

Based on the Judiciary Sentencing Information, the average and median sentences for defendants with similar offense levels and criminal histories as the defendant here are within, or close to, the Guidelines range. *See* PSR at 28-29. The defendant in this case, however, has a particularly serious record that warrants an above-average sentence (albeit one still within the Guidelines range). As described above, the defendant's record involves serious violence, multiple prior firearms discharges, repeated criminal conduct despite court-ordered supervision, and violations of prison rules. The bare offense level, criminal history score, and Guidelines range do not incorporate any of those aggravating considerations. The Court should impose a top-of-the-Guidelines sentence to capture those unique aspects of this case that the Guidelines calculations miss.

The Honorable Colleen McMahon
April 14, 2026
Page 7 of 7

## V.    Conclusion

The Government respectfully requests that the Court impose consecutive Guidelines sentences of seventy-one months' imprisonment in 26 Cr. 18 and twelve months' imprisonment in 11 Cr. 912.

Respectfully submitted,

JAY CLAYTON
United States Attorney
Southern District of New York

By: _____
Ryan W. Allison
Assistant United States Attorney
(212) 637-2474

Cc:    Counsel of Record (by ECF)